UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.     CASE NO. 8:13-cr-18-T-23TBM

ALEXIS ANTOINE DAVIS
_____/

**ORDER**

Alexis Antoine Davis was indicted in January, 2013, and convicted by a jury in August, 2013, on three counts of felonious possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Granted a new trial (Doc. 137), Davis moves (Doc. 149) to dismiss the indictment and alleges "outrageous governmental conduct" in the investigation that preceded the indictment.[*]

Davis centers his analysis on the factors discussed in *United States v. Black*, 733 F.3d 294, 303-04 (9th Cir. 2013), for assessing whether government conduct qualifies as "outrageous." Davis alleges that law enforcement possessed at the outset of the investigation neither knowledge of Davis's criminal history nor focused suspicion that Davis aspired to, or was willing to, commit a crime; that law enforcement invented and established the criminal enterprise in which Davis became ensnared,

---

[*] The United States asserts in a footnote (Doc. 150 at 7) that the motion is untimely. In this circumstance – a new trial – the motion is deemed timely. In the alternative, the applicable deadline is extended through the day of Davis's motion.

solicited aggressively and broadly for "customers," and effectively manufactured the offenses of conviction; that law enforcement "[took] advantage of Davis's depressed economic circumstance" to induce him to sell a firearm "despite his attempted resistance and his lack of predisposition"; that law enforcement became a "partner" in the crime by four weeks of "participation, encouragement, and suggestions" and by "[taking] advantage of [Davis's] limited intellectual functioning to make him believe that the storefront was engaged in legitimate, legal firearm transactions"; and that law enforcement's implementation of a storefront "sting" operation supported by leaflets and roving confidential informants was neither necessary nor "fitting to the task" of combating crime.

The United States responds (Doc. 150) in opposition and explains that law enforcement opened ""Eight Ball Buy-Sell-Trade," a store similar to a "pawnshop or a thrift store," in response to a "spike in firearm crimes" in Lakeland in the vicinity of the store; that law enforcement used flyers and confidential informants to promote awareness in the community of "Eight Ball's" willingness to purchase firearms and drugs; that Davis on his own initiative visited the store, observed a simulated firearms transaction, and on his own initiative offered to sell a gun; that Davis repeatedly visited the store and, both through an intermediary and on his own, repeatedly sold firearms to law enforcement; that law enforcement often employs a storefront as a mechanism to offer a criminal opportunity to those in search of a criminal transaction; that law enforcement's Lakeland storefront successfully

removed twenty-four firearms felons and more than a hundred guns from the neighborhood; that neither law enforcement's "Eight Ball" storefront nor the promotional flyers or confidential informants were aimed at any identified person or persons but at a spike in drug and firearm activity in an identified vicinity of Lakeland; that the law does not require an identified human target for an undercover operation; that law enforcement used against the defendant and other "customers" no coercion or pressure and no threat or promise (outside the proposed sale); and that "customers" appeared at "Eight Ball" voluntarily and at a time, in a circumstance, and with merchandise chosen by the "customer."

The claim of "outrageous" behavior by law enforcement, the claim of conduct "that shocks the universal sense of justice," is often asserted, either as a defense or as a basis for dismissal, but is "routinely rejected," although asserted in cases across the range of criminal conduct. Bennett L. Gershman, Prosecutorial Misconduct § 1.8 (2d ed.); Criminal Practice Manual, Part IV, § 41:12; Stephen E. Arthur and Robert S. Hunter, Federal Trial Handbook § 12:40; Annotation, *When is Dismissal of Indictment Appropriate Remedy for Misconduct of Government Official,* 57 A.L.R. FED. 824 (1982); Tim A. Thomas, J.D., Annotation, *What Conduct of Federal Law Enforcement Authorities in Inducing or Co-Operating in Criminal Offense Raises Due Process Defense Distinct from Entrapment*, 97 A.L.R. FED. 273 (1990); Danny R. Veilleux, J.D., Annotation, *Actions by State Official Involving Defendant as Constituting "Outrageous" Conduct Violating Due Process Guaranties*, 97 A.L.R.5th 1 (1994).

Law enforcement's actions in the instance of Davis and his visits to "Eight Ball" are described in detail both in the parties' papers and – in greater detail – in the evidence at Davis's jury trial, at which Davis was convicted.  A comparison of law enforcement's contact with Davis to the many law enforcement enterprises described in the authority cited by the parties and cited in this order leads ineluctably to the conclusion that the conception and operation of "Eight Ball," including the use of flyers and confidential informants, falls distinctly and comfortably short of the unconscionable, morally jolting, abhorrent conduct required to convert an aggressive and clever investigation by law enforcement into a violation of due process of law.

For the reasons explained by the United States, Davis's motion (Doc. 149) is **DENIED**.

ORDERED in Tampa, Florida, on June 13, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE